2028-99. And we are awaiting Jason Rodman and Jay Hensley. And I see Mr. Rodman, but we'll wait a minute to get Mr. Hensley connected. There we are. All right. Looks like we're ready to go then. Mr. Rodman. Good morning, Your Honors. Yeah, it's still morning. May it please the court. My name is Jason Rodman, and I represent the appellant Melinda Maddox, a 365-pound lady. And this case involves an unfavorable finding in a Social Security Disability Title II, really subchapter 2, and 16 case. This is a Step 5 case. The overarching argument regards migraines and the failure to account for them properly. The statutory requirement of using reasonable language, understandable language, as well as the case law frame of that being a logical bridge, is the overriding legal authority. I'm going to be talking about four different areas this morning. First, the ALJ's plain language. Second, laugh so that you don't cry. Third, neurologist catcher. And finally, what the RFC, the residual functional capacity, says. All right. So the Administrative Law Judge's plain language. And this is the sort of thing that we can talk about in oral argument that underscores the brief. And basically, one of the things I did in preparation for today was reread the Administrative Law Judge decision and specifically where the Administrative Law Judge talks about the migraines. And there's a couple different points that are worth bringing out there on the notion that it's plain language. First, in the paragraph, and I can give you a page site, but you probably are looking at it. In the first instance, so there's the introductory sentence introducing fibromyalgia and then migraines. And then in the second sentence, there's a single sentence about migraines. The plain import of it is that migraines have been handled. Then there's multiple sentences about fibromyalgia and then specifically headaches as a subhead. So, Mr. Rodman, let me interrupt for a minute and ask maybe something a little more focused. One of the things – well, the ALJ sees this, I think, as a case where there's evidence on both sides. There's evidence that she has bad migraines. She testifies to it, for example, so her own testimony. And then there's evidence that maybe they really aren't so bad. All headaches are not equal and there's evidence that her headaches are, quote, stable. They improve when she gets the glasses. And what I read from this laughing and smiling stuff, which I know you were going to get to, is that there isn't any evidence that she was sort of gritting her teeth and grinning and bearing it, that the perception from the examiner was that she actually wasn't feeling all that badly. Maybe she had a little bit of a headache, but she was okay. So isn't the ALJ's job to weigh those different threads of evidence and see which side prevails? Okay. To the on-point question at the end, I would say yes. In terms of answering it in a more substantive way, I'm going to shift to argument – or sort of topic area this morning, three, which is Dr. Neurologist Cattry. And Dr. Cattry – and the briefing gives the page sites and all that good stuff – but Dr. Cattry made it clear that he did a really careful analysis of the different things that might be causing these headaches, these migraines for her. And his record shows – in terms of his treatment, etc. – shows a clear worsening after that period of improvement, which was before the relevant time period. It also shows that once, with medication, it became quote-unquote stable. Dr. Cattry's records define stable as two to four times a month, lasting 48 hours per migraine. That's important to me, and I think important to the case. In terms of laugh so that you don't cry, honestly, I think about my sister. The first time I remember seeing this was when she had a bee sting. Her foot was all swollen up, and all she could do was laugh. And I didn't understand what's wrong with you. You're obviously in pain. Why are you laughing? And she was even chatty. And her answer – and the truth is, the most recent time this happened was when she cut herself washing a jar that had a rough edge. She didn't know it was there, and she had this deep gash in the base of her thumb. And it was, how can you be in this good a mood? And the answer was, it's a coping mechanism. And so there's 16-3P, which is discussed in the briefing. And the suggestion with that is that there's not supposed to be a character, a situation, even if it's a temporary character, and then secondary. And I think this is not important. But you do need to show that, I mean, when the ALJ interprets this evidence, actually accepts the interpretation of the examiner, that there's something wrong with that interpretation. Maybe there are two different ways you could look at it, but where's your evidence in the record that that was what Ms. Maddox was doing? That she was just masking pain with behavior that suggested that she was all right? I don't have a specific hindsight on that, and I'm going to refer to the briefing for detailed sites. But an under-reaching thing, which is important to the argument in this case, is that the ALJ specifically asserts that where the allegations were not inconsistent, she afforded deference to the allegations. And with that asserted in plain language, if the administrative college is going to make that assertion, it ought to be followed through, for one. And then looking at the RFC very quickly, Your Honor, the bad days are not accounted for. There's no actual explanation. I think the district court's reading effectively amounts to a chain re-argument. And specifically, no more than moderate noise, okay? I mean, does that mean people chatting, dogs barking, dishes clanging, phone ringing, copiers buzzing? And it can be concentrated. No concentrated exposure to bright, flashing lights. Does that mean she can't have a strobe light at her desk? Maybe in the desk next door, but not at her desk. And no discussion of, specifically, lights that don't flicker. The manufacturers have worked hard to come up with some lights that don't flicker, that are less bothersome to folks with migraines. That's not in the RFC. Then there's two-thirds of the day exposed to fumes and poor ventilation. On these facts, I rest, and I'd like to reserve my time for rebuttal, please. All right, that's fine. Mr. Hensley. Good morning, Your Honors, and I believe I'm going to have to apologize. My audio, or video, rather, is not cooperating. I think you're either seeing nothing at this point, or I may be frozen. We see a box with your name in it, but we could certainly hear you fine, so feel free to proceed. Okay. May it please the Court, I'm Jay Hensley, and I represent the Applee, in this case, the Commissioner of Social Security. Your Honors, Ms. Maddox raises just a single issue in this case. The only dispute is whether the ALJ appropriately considered Ms. Maddox's migraines and incorporated proper limitations into her determination of Ms. Maddox's residual functional capacity. In other words, did the ALJ's determination of Ms. Maddox's RFC sufficiently accommodate her migraine impairment? So, Mr. Hensley, where does, excuse me, this is Judge Wood, where does the ALJ confront and either accept or reject the durational testimony that seems to be pretty consistent? Because if you're having a migraine that lasts for 48 hours and you have to take a day off work because of that, at least in all the Social Security cases I've seen, if it winds up being a day or two a month, month in and month out, you're not employable. So, where does the ALJ deal with this durational fact? Judge Wood, I don't know that the ALJ directly addressed the durational aspect of the migraines, but she did accept the migraines as a severe impairment at Step 2. And she did discuss the fibromyalgia and migraines at page 25 of the record. And that's the paragraph that is repeatedly being referenced in the briefs in which she gave several reasons for, although finding it to be a severe impairment, not finding it to be disabling, and explaining the basis for the functional limitations that she did give. That's why I'm concerned. If she doesn't explain, I mean, I suppose you could have a migraine that lasted for three hours and you take a nap and get some medication and you're okay, or you could have a migraine that lasts two days. But that would make a big difference for functionality consequences, it seems to me. And clearly it's for the ALJ to say something about it. But the ALJ, other than these two restrictions in the RFC that I see, I don't see where the ALJ just says. I just don't think they last 48 hours. I think it's they're quick or they're well controlled. What does she do with that evidence? Yeah, I think where the ALJ came up with the, arrived at the functional limitations that she did give was really on the medical evidence itself. There were several indications in the record that her migraines were alleviated fairly well with the avoidance of both bright lights and loud noises. She did testify very briefly at her attorney's questioning to occasionally lying down in a dark room. But there's no medical evidence that suggests that this is required for her to accommodate her migraine headaches. The medical evidence simply says if she avoids the bright lights and the loud noises, this sufficiently accommodates the headaches. Can you remind me what medical evidence this is? Which doctor or treating person said that? I apologize. I don't have that in front of me. It is in our brief. It was her treating doctors, a couple of her treating doctors noted that. I'll find it. The avoidance of those two factors. It is in our brief, Your Honor. Okay. Keep in mind that the standard of review in this case is substantial evidence. And what this means is that if reasonable minds could disagree on the ALJ's conclusion, this court must affirm the commissioner's decision. In other words, a reversal for remand is appropriate only if Ms. Maddox can demonstrate that a contrary result is compelled by the evidentiary record. We submit that Ms. Maddox is unable to satisfy this stringent standard. Your Honors, it's important to note five issues that are not in dispute today. One, the ALJ recognized Ms. Maddox's migraines as being a severe impairment, as I mentioned. In her brief and in the argument today, Ms. Maddox seems to imply that the ALJ doubted the veracity of her migraines, saying that the ALJ acted as though she felt the impairment was fake. Ms. Maddox's arguments substantiating the presence of this impairment respectfully are immaterial. Again, this issue is not in dispute. The ALJ recognized Ms. Maddox's migraines as a severe impairment at step two of the sequential evaluation. Secondly, the ALJ specifically incorporated limitations into the RFC assessment that were designed to address Ms. Maddox's migraines, specifically no more than moderate noise and no concentrated exposure to bright flashing lights. Third, and I think this is important, no treatment provider or consultative examiner opined as to greater functional limitations stemming from Ms. Maddox's migraines than those incorporated by the ALJ. What does the ALJ mean? I'm looking, there are all these different ways of numbering this. Page 10 of 14 of the opinion where it begins, there are references to and allegations that the claimant experiences fibromyalgia and migraine headaches and so on and so on. But about halfway down that paragraph, she's reporting 30 headaches a month in 2017. The ALJ says, but these complaints were recorded to be, quote, vague. Then we have the reference to the laughing and smiling. And then we have vacillating from provider to provider regarding the number. So, isn't it a fair inference that these factors have given rise to a somewhat, I don't want to say a negative inference to say that there are no migraines, but that the migraines aren't really that bad? I think the inference is that the ALJ accepted that this was a severe impairment. By severe impairment, it simply means that there is more than a minimal effect on one's ability to perform substantial gainful activity. But at the same time, that the evidence simply does not substantiate greater limitations than the avoidance of light and noise. The ALJ pointed to several things, as you point out in this paragraph. She pointed out that Ms. Maddox experienced improvement with prescription eyewear, significant relief, as a matter of fact, with reading glasses. And her treatment provider at that time indicated that her headaches were likely related to eye strain and photosensitivity. She also considered inconsistencies in Ms. Maddox's reports of how often and how long her migraines occurred. There was a great disparity. On one occasion, Ms. Maddox reported having three headaches a week. But on another, it was only four times per month. And then as you pointed out, Judge Wood, by contrast, between February and April of 2017, she reported having as many as 30 headaches a month. So the ALJ took that into account as well, the inconsistencies. And then there was the laughing and smiling during examinations, which I would point out a coping mechanism versus evidence of a non-disabling limitation. This is an issue for an administrative law judge to resolve. There are conflicts in the evidence here. But our position is that Ms. Maddox simply disagrees with the ALJ's reasonable interpretation of the evidence. And what she's doing is asking this court to reweigh the evidence. But she simply fails to satisfy what is an indisputable burden of demonstrating that the ALJ failed to consider evidence showing that her migraines warranted greater functional limitations than those that the ALJ actually incorporated into the RFC determination. And also she considered, as I mentioned before, numerous instances in the record where Ms. Maddox indicated that noise and light reduction did help alleviate her migraine headaches. So we would argue that the ALJ tailored her assessment of the RFC based on what the evidence showed about her migraine condition. Your Honors, the evidence that was before the administrative law judge in this case simply did not compel a different result. And the ALJ explained her basis for including the limitations she did. Was her analysis perfect? No, definitely not a perfect analysis. But there is substantial evidence supporting the ALJ's decision. And for that reason, as I see my time winding down, I will ask this court to affirm the ALJ's finding. If there are no further questions, I do thank you very much for your time. All right, thank you very much. Anything further, Mr. Maddox? Sorry, Mr. Rodman. Thank you, Your Honor. Briefly, and I'm actually trying to hit on a couple things really quickly unless there's a need for me to clarify for your favor. Okay, so first off, it's our position that the inconsistency, particularly during the period before this, medications were very stabilized at all for the migraines, is the sort of thing that's consistent with migraines. And also, isn't the sort of inconsistency that 16-3P is thinking of and actually looks a little bit more akin to an improper character assessment instead of an evenhanded approach under 16-3P. Moving on to a different topic, I mean, there's whole lines of evidence not accounted for here, including, this is in the briefing, the 2017 imaging, which shows stenosis, which is a new level of problems in the neck. And that lines up with Dr. Khatri's paracervical tenderness assessment as a cause to the migraines. And the impairments in combination isn't just, I mean, it's not necessarily the lead issue, but the fact that she's 365 pounds and all of this started with her having a rectal surgery that failed and caused permanent apparent numbness and problems and having the orthopedic and fibromyalgia issues. Imagine the bending and the time involved. Mr. Rodman, nobody thinks this is a great situation for her to be in. But I understand the appeal here has boiled down to the migraines. And I'm not sure that you've presented an argument that weaves together these other unfortunate conditions with the migraines. I would agree that the lead issue is the migraines, Your Honor. And there was an SSR on headaches. It didn't get into the briefing. It wasn't reached. It's the sort of thing, as discussed, that the migraines were not properly analyzed. There is another issue that wasn't briefed, which regards the appointment clause. We do request, both of us, we talked before, that if you do want to rule on the appointment clause issue, you give us a chance to brief that, both sides, based on the recent Supreme Court case. And I have nothing else, Your Honor. Thank you for your time, all of you. All right. Well, thank you very much, Mr. Rodman. Thank you, Mr. Hinesley. The court will take the case under advisement.